## DANIEL WINSLOW *vs.* SAMUEL TARBOX.

The mortgagee of a vessel, who had never taken possession, or received a delivery thereof, is not liable for repairs or supplies furnished the vessel without his knowledge.

An absolute bill of sale of a vessel, with a bond given back at the same time to reconvey the same on the payment of a certain sum and all expenses arising in consequence of having received the bill of sale, by a stipulated time, is but a mortgage.

DANIEL D. SMITH, of *Boston*, on the 22d of *April*, 1836, being sole owner of brig *Mary Hart*, conveyed, by absolute bill of sale, one half the brig to *Samuel Tarbox*, of *Westport*, in *Massachusetts*, for the alleged consideration of $1,100, to secure a note from *Smith* to him, of $701,40; and *Tarbox*, at the same time, and as a part of the same transaction, gave back to *Smith* a bond,

conditioned, that as the bill of sale was made as collateral security for the payment of the note, that if the note was paid at maturity, and he was indemnified for any charges and expenses he might be at on account of the brig, he would reconvey the half to *Smith*. On *May* 24, 1836, *Smith* conveyed to the plaintiff, who resided in *Portland*, half of the same brig. In the winter of 1837, the brig was repaired and supplies furnished by order of *Smith*, by one *Tupper*, in *Charleston*, *South Carolina*, and sailed from thence on her return home, and was lost on her passage. *Tupper* drew on the plaintiff for the amount of repairs, and was paid. This suit is brought to recover one half of the sum. The other facts in the agreed statement of the parties, appear sufficiently in the opinion of the Court.

In the written arguments of the counsel,

*Neal*, for the plaintiff, contended : —

1. That to render *Tarbox* liable as part owner for repairs and supplies furnished in good faith, under the circumstances of this case, it was not necessary that he should have taken possession under the bill of sale ; that he should have received the earnings of the vessel ; that he should have had any care or management of her ; nor to have had his name inserted in the enrolment ; but that having always manifested his determination to assume the ownership from the moment she was repaired and fitted for sea, at *Portland*, to the time of her loss ; having ordered possession to be taken of her, three several times ; having twice ordered the enrolment to be changed ; having ordered her to be sold, or taken and repaired, by *Tupper*, as his agent — *Tarbox* did all in his power to manifest his ownership, and was therefore liable to those who might be deceived by such appearances of ownership.

2. That these repairs and supplies were furnished in good faith, since there is no intimation to the contrary ; and that *Winslow*, who paid the whole amount for these repairs and supplies ; and *Tupper*, who furnished both, were deceived by these appearances of ownership ; and that, if *Winslow* is not entitled to recover, the absolute bill of sale from *Smith* to *Tarbox*, the false consideration therein alleged, and the secret understanding between *Smith* and *Tarbox*, that *Smith* should continue to hold the brig on his own

account as before, notwithstanding the sale — an agreement of which it is admitted *Winslow* knew nothing — was a fraud upon the public in general, and upon *Winslow* in particular.

3. That the sale to *Tarbox*, being but of one half the vessel, the sale being made at *Westport*, while the vessel was at *Portland* undergoing repairs and fitting for sea, and *Smith* not in the actual possession thereof, actual delivery of the part sold was impossible, and the possession of *Smith* and *Winslow* was the possession of *Tarbox*.

4. That if a formal taking possession was possible and necessary, the possession of *Smith* and *Winslow* not being the possession of *Tarbox*, we contend that *Tarbox* was not obliged to follow her from port to port; that he might wait until she returned to *Portland*, or to *Westport*, where the conveyance was executed; and that the whole of the facts, taken together, are at least equivalent to the taking possession and change of enrolment, and therefore amount to an acknowledgment of ownership by *Tarbox* for all the purposes of this action.

5. That inasmuch as the draft by *Tupper* on *Winslow*, was for the whole amount of the supplies and repairs while *Tarbox* was believed by both to be half owner; as the said supplies and repairs were charged by *Tupper* to the brig herself, and not to *Smith*; and as *Winslow* wholly paid the draft so drawn by *Tupper*, he was entitled to recover of *Tarbox* one half of the amount of said draft.

He cited the following authorities, and commented upon them: *Tucker v. Buffington*, 15 *Mass. R.* 477; *Story's Abbott on Shipping*, 11, 12, and *note*; *Badlam v. Tucker*, 1 *Pick.* 397; *Hussey v. Allen*, 6 *Mass. R.* 163; *Brinley v. Spring*, 7 *Greenl.* 254; *Pearce v. Norton*, 1 *Fairf.* 252; *Dame v. Hadlock*, 4 *Pick.* 458; *Colson v. Bonzey*, 6 *Greenl.* 475; *Hatch v. Smith*, 6 *Mass. R.* 53; *Chapman v. Durant*, 10 *Mass. R.* 51; *James v. Bixby*, 11 *Mass. R.* 34.

*Randall*, for the defendant, contended, that *Tarbox* was not liable in this case: —

1. Because *Tupper*, who made the repairs at the request of *Winslow* and *Smith*, gave no credit to *Tarbox* as owner, and

made no charge against him. *Tucker* v. *Buffington,* 15 *Mass. R.* 477.

2. Because *Tarbox* was, at most, only mortgagee, and as such not liable, having never taken possession, nor caused the papers to be made out in his name. *Chinnery* v. *Blackburne,* 1 *H. Black.* 117; *Story's Abbott,* 19, *note; Colson* v. *Bonzey,* 6 *Greenl.* 474.

3. Because *Tarbox,* by neglecting to take possession of the brig, which was in port when conveyed, and for near a month afterward, had lost all claim to her, as to all the world except *Smith. Portland Bank* v. *Stubbs,* 6 *Mass. R.* 422; *Tucker* v. *Buffington,* before cited; *McIntyre* v. *Scott,* 8 *Johns. R.* 159; *Colson* v. *Bonzey,* 6 *Greenl.* 474.

4. Because *Tarbox* had he been actual part owner, would not be liable to the other part owner for repairs which he never consented to make. *Abbott,* 68; *Collyer on Part.* 681.

5. Because *Tarbox,* had he been actual owner, was not owner for the voyage, *Smith* having employed the vessel on his own account, from the time of giving the bill of sale to the time of the loss. *Abbott,* 22, 100.

The opinion of the Court was drawn up by

WESTON C. J.—In the *Portland Bank* v. *Stubbs,* 6 *Mass. R.* 425, it was laid down, that a mortgage of a chattel is not valid, without possession by the mortgagee. And in *Tucker* v. *Buffington et al.,* 15 *Mass. R.* 477, the Court say, "it may well be doubted, whether a mortgagee, who might have taken possession, but never has, can be considered as owner to any purpose whatever." *Smith* being, at the time when he made his bill of sale to *Tarbox,* sole owner of the brig, might have given him possession of the part secured to him. She remained at *Portland,* at no great distance from the residence of the defendant, for twenty-one days, before *Smith* conveyed the other half to *Winslow.* For any thing which appears, while she was plying from port to port, in coasting trips that season, the defendant might readily have obtained information of her position, and might thereupon have taken possession, but no movement to this effect was taken by him, until *October* or *November,* when the attempt failed. This was not ex-

cused by his ineffectual order on *Winslow*, to have his name, instead of *Smith's*, inserted in the enrolment. If actual delivery or possession is essential to give effect to such a mortgage, it does appear to have been wanting in this case ; and the omission is not excused by the facts agreed. But we do not place the decision of the cause upon this point, being of opinion, that the defendant is entitled to judgment upon other grounds.

If the lien, intended to be created, by the bill of sale to the defendant and the bond to *Smith*, took effect, the position of the defendant was that of a mortgagee, who had not taken possession. In *Chinnery* v. *Blackburne*, 1 *Hen. Bl.* 117, *note*, it was said by *Lord Mansfield*, that " till the mortgagee takes possession, the mortgagor is owner to all the world, and he is to reap the profits." And it was accordingly held, that such mortgagee was not liable for repairs in *Jackson* v. *Vernon*, 1 *Hen. Bl.* 114. Opposed to this opinion, is the *dictum* of *Lord Kenyon*, in *Westerdell* v. *Dale*, 7 *T. R.* 306.

In *Philips* v. *Ledley*, 1 *Washington's C. C. Reports*, 226, *Washington J.* fully sustains the cases, cited from *Henry Blackstone*, with which he insists, that of *Westerdell* v. *Dale* is not necessarily at variance. And although he admits, that the mortgagee of a vessel, before possession delivered, has the legal title, yet he decides, that he is not responsible for repairs, or entitled to her earnings. In *McIntyre* v. *Scott*, 8 *Johns. R.* 159, the Court approve the decision in *Jackson* v. *Vernon*, and held, that a mortgagee out of possession, was not liable for supplies furnished to the ship. This last case, as well as the two cited from *Blackstone*, is distinctly recognized and approved in *Thorn* v. *Hicks*, 7 *Cowen*, 697. The weight of *American* authority then, is manifestly against the liability for repairs, of a mortgagee, out of possession.

But in this case, the mortgagor, *Smith*, was not only in possession, employing the vessel for his own purposes, and on his own account, but the repairs, for the payment of which the plaintiff claims contribution of the defendant, were made by *Tupper*, the consignee of *Smith*, at the request of *Smith*. It does not appear, that at the time they were made, he was advised, that the defendant had any interest whatever. *Tupper's* contract was therefore with *Smith*, the mortgagor in possession. In the original text of

*Abbott*, as cited by *Story*, *Story's Abbott*, 19, *note*, *Abbott* states, that where repairs are ordered by the mortgagor, they may be reasonably deemed in law, to have been furnished on his credit.

It is insisted, however, that the defendant rendered himself liable by his letter to *Tupper*, dated *February* seventh, and received on the eighteenth of that month. The repairs had then been made by *Tupper*, as the consignee of *Smith*, and by his order. The defendant directed *Tupper*, first, to take possession for him; secondly, to cause the vessel to be enrolled in his name; thirdly, to sell her if he could; and lastly, if that could not be done, he authorized him to repair her; but specially directed him, in no event, to suffer the vessel to leave the port of *Charleston* without taking possession, and causing her to be enrolled in the defendant's name. *Tupper* failed to comply with these requisitions, taking no measures for the benefit of the defendant, after the receipt of his letter. If the defendant was not liable before, he cannot be made so by that letter, upon the facts agreed.

Upon the whole, the opinion of the Court is, that the action is not sustained.

*Plaintiff nonsuit.*